JAMES W. SMITH, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

Under the definition of "land" and "real estate," as given in the provisions of the Revised Statutes, relating to assessment and taxation (2 R. S., 387, §§ 1, 2), one person may be taxed as owner of the fee, and another for the structures thereon, or the minerals or quarries therein.

A pier constructed in the harbor of New York, upon lands belonging to the city, under a grant from it of the right to construct and maintain the pier, and to charge wharfage for its use, is land within the meaning of said statutory provisions, and liable to be assessed to the owner, and taxed as such.

It is immaterial that the public have a right also to use the pier as a street.

It *seems* that the right to wharfage would pass, as incident to the pier, to a purchaser thereof at a tax sale.

*Boreel* v. *The Mayor* (2 Sandf., 552) distinguished and questioned.

(Argued February 15, 1877 ; decided February 23, 1877.)

APPEAL from judgment of the General Term of the Court of Common Pleas in and for the city and county of New York, affirming a judgment in favor of plaintiff, entered upon an order overruling a demurrer to the complaint.

This action was brought to vacate and set aside certain assessments and taxes as a cloud upon plaintiff's title. The facts alleged in the complaint were, in substance, as follows : In 1852, the defendant granted to William and Milton G. Smith certain land under water, in New York harbor, including the

southerly half of Stanton street, saving and reserving so much thereof as formed part of Stanton street, for the use and purposes of a highway, with an obligation on the part of the Smiths to build certain streets, including the southerly half of Stanton street, and to keep such streets forever in repair; also to build certain piers or wharves opposite the land so granted, including one at the foot of the southerly half of Stanton street, at their own cost, which wharves or piers said Smiths were forever thereafter to keep in repair, and said streets and wharves or piers were forever to be public streets and wharves or piers; said Smiths were granted a perpetual right to all wharfage, cranage, benefits and advantages growing or arising from such wharves or piers. In May, 1857, Milton G. Smith conveyed his interest in said premises to William Smith. In 1864, Smith built a pier at the foot of the southerly half of Stanton street, and since its erection said pier has always been used and occupied, as provided by said grant. By a series of mesne conveyances said property, in 1866, came into the possession of the plaintiff. In 1864 and 1865 said property was assessed and taxed to William Smith as owner or occupant, and was described in the assessment roll as " one-half of pier between Stanton and Rivington streets." From 1866 to 1872, inclusive, said property was assessed and taxed to William Smith as owner or occupant, and was described as " southerly half of pier foot of Stanton street."

The defendant demurred to the complaint as not containing facts sufficient to constitute a cause of action, and because the court had no jurisdiction of the subject-matter. The demurrer was overruled, and leave given to answer.

No answer having been served judgment was rendered for the plaintiff, declaring the taxes void, and enjoining the collection thereof, by sale or otherwise.

*E. O. Andrews* for the appellant. There was no property here subject to taxation. (1 R. S. [5th ed.], 808, § 1; 2 Dillon on Munic. Corp. [2d ed.], § 614; Cooley on Taxation, 130.) The plaintiff's estate was an incorporeal hereditament and

was not liable to taxation. (*Boreal* v. *Mayor, etc.,* 2 Sandf., 752; 2 Kent's Com., 458, 459; *De Witt* v. *Hays,* 2 Cal., 468.) Plaintiffs' interest was affected by a tax on the land. (2 Washb. on R. P., 248; Gerard's Titles, § 1, chap. 2; Laws 1871, chap. 381, §§ 1, 4; *Warner* v. *Van Alstyne,* 3 Paige, 513.) Though actually void the tax and proceedings relating thereto are valid on their face and create an apparently valid lien on plaintiff's property and a cloud upon his title. (*People* v. *Cassidy,* 46 N. Y., 46; *Heywood* v. *Buffalo,* 14 id., 534; *Ward* v. *Dewey,* 15 id., 519, 529.) A court of equity will interfere either to remove or prevent a cloud upon title. (*Scott* v. *Onderdonk,* 14 N. Y., 9; 9 id., 534; *Allen* v. *Buffalo,* 39 id., 386; *Crook* v. *Andrews,* 40 id., 547.) Equity will relieve against an illegal tax as doing an irreparable injury when the enforcement of it might destroy a valuable franchise. (Cooley on Taxation, 539.)

*D. J. Dean* for the respondent.

Earl, J. It is difficult to perceive how, upon any theory, the plaintiff can maintain this action. He seeks to have certain assessments and taxes declared illegal and void on the ground that they are a cloud upon his title. Our attention has been called to no case where such an action has been maintained to remove a cloud upon any title except that to real estate, and yet he claims that his pier is not real estate. If it is real estate, it is conceded that the taxes have been legally imposed. If it is not real estate, then there is no precedent in this State for the maintenance of the action. (*Ward* v. *Demey,* 16 N. Y., 519.) But there may be some property or rights not real estate, over which a cloud may be cast which a court of equity will remove, and therefore, we will proceed further.

The law provides that all lands in this State, except such as are exempted, shall be liable to taxation; and that the term "land" as used in the chapter as to "property liable to taxation," shall be construed "to include the land itself, including

land under water, all buildings and other articles erected upon or affixed to the same, all trees and underwood growing thereon, and all mines, minerals, quarries and fossils in and under the same," and real estate is defined in the same way. (1 R. S., 387, §§ 1 and 2.) Under the definition of land thus given, one may be taxed as owner of the fee of land, and another for the trees, buildings and other structures thereon, and the minerals and quarries therein.

Upon the assumption, therefore, that the fee to the land under water upon which the pier was constructed, was reserved to and remains in the city, yet plaintiff's structure, called a pier, is real estate for the purpose of taxation. It is not a franchise and he is not taxed upon a mere franchise. A franchise is defined to be a special privilege conferred by government on individuals or corporations, and which does not belong to citizens of the country generally by common right (2 Wash. on Real Prop., 267; *Bank of Augusta* v. *Earle*, 13 Pet., 519, 595), and it may be an incorporeal hereditament.

Under the laws of our State a mere franchise or incorporeal hereditament of any kind is not taxable, except by special statute. The plaintiff has a franchise to construct and maintain this pier and take wharfage for its use. The pier itself is a structure built under his franchise. It is tangible, bulky property, and in no sense incorporeal. (2 Black. Com., 191.) It is not like a mere right or privilege which has no physical existence. A person may have a franchise to build and maintain a bridge and take toll for its use. The bridge, as a structure, is not a franchise. He may not be taxed on his franchise, but he can be taxed upon the structure or real estate. A railroad company has a franchise to construct and maintain a railroad. Its franchise cannot be taxed, but its road and other structures can be taxed as real estate. The bridge and railroad may not be of any use to their owners without the franchise pertaining or incident to them, and yet they may be taxed, and for the purpose of fixing their value, the uses to which they may be subjected must be considered. (*The People* v. *Barker*, 48 N. Y., 70.)

A pier is a large, bulky structure ; it may cost many thousand dollars. If it is not real estate, what is it ? It is not personal estate. If it is not real estate, it is because it is placed upon land belonging to another. Practically the plaintiff has every benefit from the land upon which the pier is placed which he could have if he owned the fee therein. His right is perpetual to him, his heirs and assigns forever. · That such an interest in land is real estate for the purpose of taxation cannot be doubted since the decision of the case of *The People* v. *Cassidy* (46 N. Y., 46). There, the track of a street railway was placed in a street. All the right the railway company had was the right to lay its track in the street and maintain it there and operate its road thereon. Its track on the street was assessed and taxed as real estate. The ground was there taken, as here, that it was not real estate, but it was held to be taxable as real estate. FOLGER, J., writing the opinion of the court, said : " The statute means, for its purpose, to make two general divisions of property, one, all lands, another, all personal estate ; and then, to be more definite, it declares that by land is meant the earth itself and also all buildings and other articles erected upon or affixed to the same. We do not think that when buildings or other articles are erected upon or affixed to the earth, they are not, in the view of the statute, land, unless held and owned in connection with the ownership of a fee in the soil. We are of opinion that the statute means that such an interest in real estate as will protect the erection or affixing thereon and the possession of buildings and fixtures, will bring those buildings and fixtures within the term " lands," and hold them to assessment as the land of whomsoever has that interest in the real estate and owns and possesses the buildings and fixtures."

It matters not that the public have a right also to use this pier as a street. (*Taylor* v. *Atlantic Mutual Ins. Co.*, 37 N. Y., 275.) That does not essentially interfere with or impair its usefulness as a pier.

It is not needful to inquire what rights a purchaser of the pier at a tax sale would acquire. It is believed that the fran-

chise would pass as incident to the pier. But whether that be so or not, as the taxes are personal taxes against the plaintiff as owner of the real estate, the condition and value of the pier as property while he owns it need only be considered.

Some things are said in the case of *Boreel* v. *The City of New York* (2 Sandford, 552), which are apparently in conflict with the views above expressed. But the only points there decided are, that a right to wharfage could not be taxed and that the purchaser of a bulk-head at a tax sale did not obtain the right of wharfage as part of or incident to his purchase. It is doubted whether the case was properly decided. One who purchases land at a tax sale must take all the easements and incidents attached or pertaining to the land. If he purchases a mill he obtains with his purchase the water and right to flow, and other incidents pertaining to the mill. If he purchases a farm he obtains the easements and incidents connected therewith and pertaining thereto. Plaintiff's right of wharfage can only be exercised upon the pier; and when he has lost his pier he has lost all right and power to collect wharfage. The right of wharfage is incident to the pier and is a compensation for the use thereof. A sale of the pier by the plaintiff, with no mention of the right of wharfage, would carry with it the latter right. Whatever the plaintiff could sell would pass by a legal and valid sale of the pier for a tax. In such case this franchise has not been taxed, but it passed as unalterably attached to the land sold and as incident thereto.

It follows, from these views, that the judgment must be affirmed, with costs.

All concur.

Judgment affirmed.