THE TIDE WATER PIPE LINE COMPANY (LIMITED), PLAINTIFF IN ERROR, v. ARTHUR E. BERRY, COLLECTOR, &c., DEFENDANT IN ERROR.

1. The General Tax act of April 11th, 1866 (*Rev.*, p. 1150), is a law providing for the taxation of property to afford revenue for local purposes. The Tax act of April 18th, 1884 (*Rev. Sup.*, p. 1016), imposes a franchise tax on certain corporations to provide revenue for the state.
2. The act of 1866, taxing property, is not superseded with respect to the taxation of corporations by the act of 1884, imposing a franchise tax. Both schemes of taxation apply to foreign as well as domestic corporations.
3. A foreign corporation, owning a "pipe line" for carrying petroleum, which is laid under ground, under a grant by the owner of the fee, is taxable for the "pipe line" as real estate in the township where it is located, under the definition of real estate contained in the third section of the act of 1866, although the owner of the fee has reserved the use of the surface for cultivation, &c.

On error to the Supreme Court.    For opinion of Supreme Court, see 23 *Vroom* 308.

For the plaintiff in error, *Alvah A. Clark.*

*Contra, Ephraim Cutter.*

The opinion of the court was delivered by

DEPUE, J. The prosecutor, a foreign corporation organized under the laws of Pennsylvania, is the owner of an iron pipe line, used for carrying crude petroleum from McKean county, Pennsylvania, to the Kill von Kull, at Bayonne, in this state. Its principal office is at Bayonne, in the county of Hudson, where the business of the company is carried on.

The prosecutor was taxed for the year 1887 by the township of Woodbridge for seven miles of pipe laid in that township, extending across the township from Raritan township to the Rahway river.

The tax was assessed as a tax upon lands, under the second section of the General Tax act of April 11th, 1866. *Rev.*, *p.* 1150.

The prosecutor was assessed and paid a tax under the act of April 18th, 1884, entitled "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof." *Rev. Sup.*, *p.* 1016.

Taxation under the act of 1884 was designed to provide revenue for the state. The tax laid by that act is a franchise tax imposed for the privilege of transacting business in this state. *Evening Journal Assn.* v. *State Board*, 18 *Vroom* 36; *Trenton Savings Fund* v. *Richards*, 23 *Id.* 156; *Standard Underground Cable Co.* v. *The Attorney General*, 1 *Dick. Ch. Rep.* 270. The taxes imposed by the General Tax act of 1866 (*Rev., p.* 1150) are laid upon property to provide revenue for local purposes. Both schemes of taxation apply as well to foreign as to domestic corporations, and the act of 1866, taxing property, has not been superseded by the act of 1884, imposing a tax upon franchises.

The principal contention is, that the property taxed is not real estate within the meaning of the third section of the act of 1866. If it be personalty, the prosecutor was taxable for it at Bayonne, where its principal office is, pursuant to section 7 of the act of 1866. If it be lands, within the meaning of the act of 1866, it was lawfully assessed under section 6 in the township where the property is situated.

The act of 1866 is a general law for the taxation of property. In the second section it is enacted that all real and personal estate within this state, whether owned by individuals or by corporations, shall be liable to taxation at the full and actual value thereof.

The fourth section defines what property, rights and credits in the nature of personalty shall be comprised under the term "personal estate." Section 3 declares that the term "real estate" in the act "shall be construed to include all lands, all water power thereon or appurtenant thereto, and all buildings or erections thereon or affixed to the same, trees and underwood growing thereon, and all mines, quarries, peat and marl beds, and all fisheries."

The prosecutor acquired a right to lay and maintain its pipe upon lands of private owners by a deed of grant under seal. The operative words of conveyance are, that the grantor "grants a right of way over and through lands in Middlesex county, for the purpose of constructing from time to time one line of iron pipe for the transportation of petroleum, in such manner as said grantee may deem necessary, with free ingress and egress to construct, operate, maintain, and from time to time repair and remove the same in such manner as may be desired." Under these grants, which contain apt words to create an estate in fee, the prosecutor acquired an interest in the soil and a right of possession upon the terms and subject to the conditions expressed in the grant, and the pipe line is permanently affixed in the ground from two and a half to three feet below the surface. The deeds provide "that the pipe shall be so laid as not to interfere with the usual cultivation of the premises, nor with any buildings thereon, and that all actual damage done to crops, timber or otherwise, by the construction or operation of said pipe line, shall be paid for in full by the grantee."

The fact that the grantor retains the surface for cultivation does not exclude the taxation of the prosecutor for its right and estate therein. Under the statute of 43 Eliz., ch. 2, which laid a land tax on the occupier, it was held that a water

company laying its pipes below the surface under a grant was ratable for the occupation of lands below the surface of the soil by its pipes, though another person was rated for the herbage. *Rex* v. *Chelsea Water Works,* 5 *Barn. & Ad.* 155. Under a tax law identical with the third section of the act of 1866, the Court of Appeals of New York held, that under the definition of "land," as contained in the act, one person may be taxed as owner of the fee and another for structures thereon or minerals and quarries therein. *Smith* v. *The Mayor of New York,* 68 *N. Y.* 552. Nor does the reservation by the grantor of power to revoke the grant for violation of the terms of the grant detract from the grantee's estate. The reservation is in the nature of a right of re-entry for condition broken. The estate granted subsists until entry be made for condition broken. *People, ex rel. Muller,* v. *Board of Assessors,* 93 *N. Y.* 308.

The particulars enumerated in section 3 as property taxable as real estate and at the place and manner in which lands are taxable, comprise no right or interest that by the common law would not be embraced in the term "land." The act evidently contemplates that such rights and interests, when separated in ownership from the fee, may be taxed to the owner thereof as distinguished from the owner of the fee in the soil. The courts of New York have so construed their statute, and have held that the statute means that such an interest in real estate as will protect the erection and possession of buildings and permanent fixtures thereon shall be taxable as the land of the person who has that interest in the real estate and owns and possesses the buildings and fixtures, though unaccompanied by the fee. *People* v. *Cassity,* 46 *N. Y.* 46 ; *Smith* v. *The Mayor of New York,* 68 *Id.* 552, 556 ; *People, ex rel. N. Y. El. R. R.,* v. *Commissioners,* 82 *Id.* 459, 462. Under this construction the New York courts have held that a pier constructed in New York harbor (*Smith* v. *The Mayor of New York, supra*), the track of a street railroad (*People* v. *Cassity, supra*), the foundation columns and superstructure of an elevated railway (*People, ex rel. N. Y. El. R. R.,* v. *Commission-*

*ers, supra*) and an underground railway (*People, ex rel. N. Y. & H. R. R. Co.,* v. *Commissioners,* 101 *N. Y.* 322), were taxable to the owners thereof as real estate, although the fee in the land to which such structures were affixed was in another.

The counsel of the prosecutor relies mainly on *People* v. *Board of Assessors,* 39 *N. Y.* 81. In that case it was held that the mains of a gas company under the streets of a city could not be regarded as real estate for the purpose of taxation. Laying gas and water pipes in the streets, under legislative authority, is recognized as a legitimate use of the streets. *State* v. *Trenton,* 7 *Vroom* 79, 85; 2 *Dill. Mun. Corp.* (*4th ed.*) 691, *note* 1, and cases cited. At all events, it does not appear in the case that the company had acquired from any source an interest or right in the lands. The case was decided on the authority of *Boreel* v. *The Mayor of New York,* 2 *Sandf.* 552, which was disapproved in *Smith* v. *The Mayor of New York,* 68 *N. Y.* 552, as applied to facts like those in this case.

We think the assessment was properly made against the prosecutor, and the judgment of the Supreme Court sustaining it should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DEPUE, DIXON, GARRISON, REED, SCUDDER, BROWN, CLEMENT, SMITH, WHITAKER. 11.

*For reversal*—None.